# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re Medtronic, Inc. Sprint Fidelis
Leads Products Liability Litigation

Multidistrict Litigation
No. 08-1905 (RHK/JSM)

This document relates to:           **MEMORANDUM OPINION**
ALL CASES                            **AND ORDER**

Daniel E. Gustafson, Gustafson Gluek, PLLC, Minneapolis, Minnesota, Plaintiffs' lead counsel, Robert K. Shelquist, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota, Plaintiffs' liaison counsel, Charles S. Zimmerman, Zimmerman Reed PLLP, Minneapolis, Minnesota, chair of Plaintiffs' Steering Committee, for Plaintiffs.

George W. Soule, Jennifer K. Huelskoetter, Melissa R. Stull, Bowman and Brooke LLP, Minneapolis, Minnesota, Kenneth S. Geller, David M. Gossett, Carl J. Summers, Mayer Brown LLP, Washington, D.C., Herbert L. Zarov, Daniel L. Ring, Stephen J. Kane, Mayer Brown LLP, Chicago, Illinois, Philip S. Beck, Tarek Ismail, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, Illinois, for Defendants.

In deciding the sensitive question of whether to recuse . . . , the test of impartiality is what a reasonable person, knowing and understanding all the facts and circumstances, would believe.  It is for that reason that we cannot adopt a *per se* rule holding that when someone claims to see smoke, we must find that there is fire.  That which is seen is sometimes merely a smokescreen.  Judicial inquiry may not therefore be defined by what appears in the press.  If such were the case, those litigants fortunate enough to have easy access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges.  Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner's arsenal.  Instead, the sensitive issue of whether a judge should be disqualified requires a careful examination of those relevant facts and circumstances to determine whether the charges reasonably bring into question a judge's impartiality.

In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1309 (2d Cir. 1988).  The "relevant

facts and circumstances" here concern my son, Richard H. Kyle, Jr., a shareholder at

Fredrikson & Byron, P.A. ("Fredrikson"), a large Minneapolis law firm that represents

the Defendant, Medtronic, in corporate matters and other litigation unrelated to the case

*sub judice*.  According to Plaintiffs, these facts require my recusal from this case.  The

Court does not agree.

## BACKGROUND

This multidistrict litigation concerns Medtronic's Sprint Fidelis defibrillator leads,

which were voluntarily recalled on October 15, 2007.  See In re Medtronic, Inc. Sprint

Fidelis Leads Prods. Liab. Litig., 592 F. Supp. 2d 1147, 1154 (D. Minn. Jan. 5, 2009).

Following the recall, plaintiffs nationwide filed actions against Medtronic alleging

(among other things) claims for negligence, strict products liability, fraud, and breach of

express and implied warranties.  On February 21, 2008, the Judicial Panel on Multidistrict

Litigation consolidated 27 such actions before the Court for pretrial proceedings, pursuant

to 28 U.S.C. § 1407.  Hundreds of other cases were later transferred here as "tag along"

actions.  At present, this multidistrict litigation comprises over 700 individual cases.

Following its initial status conference in May 2008, the Court appointed lead

counsel for Plaintiffs and a steering committee to direct the course of the litigation, who

later filed a Master Consolidated Complaint for Individuals (the "MCC") on behalf of all

individual Plaintiffs in this case.  Medtronic later moved to dismiss the MCC, arguing that

each of the asserted claims was preempted under federal law.  The parties engaged in

substantial briefing on that issue, and the Court held a nearly two-hour hearing on the

Motion in December 2008.  On January 5, 2009, the Court granted Medtronic's Motion

and dismissed the MCC with prejudice.[1]  At no point during the proceedings before the

JPML, at the initial status conference, in the many status conferences that followed, or in

connection with the briefing and oral argument on Medtronic's Motion to Dismiss, did

Plaintiffs raise the issue of my son's position at Fredrikson or the firm's representation of

Medtronic in other matters.

Now, less than two months following the dismissal of the MCC but over a year

after the JPML's consolidation order in this Court, Plaintiffs have moved for my recusal.

According to Plaintiffs, "[a]pproximately two weeks ago, [they] discovered . . . that

Fredrikson . . . has handled $14 billion in what it describes as 'deals' with Medtronic."

(Pl. Mem. at 1.)  As a result of "these strong financial interests" and "many other

connections" between Medtronic and Fredrikson, including (i) several Fredrikson

attorneys having previously worked for Medtronic and (ii) Fredrikson representing the

company in intellectual-property litigation, counseling, and corporate work, Plaintiffs

contend that there exists a presumption that I am biased due to my son's "position as a

shareholder at Fredrikson."  (Id. at 2.)  Plaintiffs further argue that even if no such

presumption exists, I must nevertheless recuse because a reasonable person would

question my impartiality.  (Id. at 1-2.)

---

[1] The Court subsequently granted Plaintiffs leave to file a Motion for Leave to Amend the
MCC.

## STANDARD OF REVIEW

Recusal in the federal courts is governed by 28 U.S.C. § 455, which contains two subsections pertinent here.  Under Section 455's generalized, "'catchall' recusal provision," Liteky v. United States, 510 U.S. 540, 548 (1994), a judge must disqualify himself whenever his "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The second, more-specific subsection addresses a judge's personal relationships and requires recusal whenever a judge knows that a family member has "an interest that could be substantially affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(5)(iii).  The decision whether to grant a motion under Section 455 is committed to the Court's "sound discretion."  Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc).

Judges are presumed to be impartial and, accordingly, parties seeking recusal bear "the *substantial* burden of proving otherwise."  United States v. Dehghani, 550 F.3d 716, 721 (8th Cir. 2008) (emphasis added) (internal quotation marks and citation omitted); accord Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (movant "carries a heavy burden of proof") (citation omited).  "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."  In re Drexel Burnham Lambert, 861 F.2d at 1312; accord Laird v. Tatum, 409 U.S. 824, 837 (1972) (Mem. of Rehnquist, J.); Sw. Bell Tel. Co. v. FCC, 153 F.3d 520, 523 (8th Cir. 1998) (Mem. of Hansen, J.).  Otherwise, parties could easily engage in judge shopping and "deal a serious blow to the integrity of the court system."  ADC Telecomms., Inc. v.

Thomas & Betts Corp., Civ. No. 98-2055, 2001 WL 848559, at *1 n.1 (D. Minn. July 25, 2001) (Frank, J.).

## ANALYSIS

### I.      Section 455(b)

The Court begins its analysis with the more specific subsection of Section 455, Section 455(b). As noted above, Section 455(b)(5)(iii) requires a judge to recuse if his or her child[2] is known to have an interest in an action that "could be substantially affected" by its outcome. Plaintiffs argue that because my son is a shareholder at Fredrikson, and because Fredrikson derives "significant" revenue from Medtronic, it necessarily follows that my son has an interest that could be affected by the outcome of this case. (Pl. Mem. at 15-17.) The argument, it seems, is predicated on the assumption that Medtronic is likely to steer its legal business elsewhere in the event the Court were to rule against it in this case. (See id. at 13.)

The Court cannot find any principled basis to accept this argument, particularly given the purportedly symbiotic relationship between Fredrikson and Medtronic. Indeed, Plaintiffs repeatedly note that there exists a "deep, pervasive and ongoing" relationship between the two (Pl. Mem. at 17), which is driven by the fact that several former Medtronic attorneys now work for the firm. In light of this close association, it seems particularly unlikely that *any* ruling the Court might make in this case, whether favorable

---

[2] Section 455(b)(5)(iii) also applies to any other family members "within the third degree of relationship" to a judge or his spouse.

or unfavorable to Medtronic, would have an impact on the quantum of business the firm

receives.  Simply put, the associations between Medtronic and its former lawyers, and the

amount of business those associations generate for the firm, will in all probability

continue to exist regardless of the outcome here.[3]

Furthermore, it is "utter speculation – not in accord with common sense – that a

negative outcome in this litigation would affect the relationship between [Fredrikson] and

[Medtronic]," when Medtronic is a large, multi-national company with in-house counsel

who presumably know "that it would be improper for the court to be influenced by

[Medtronic's] relationship with" the firm.  Diversifoods, Inc. v. Diversifoods, Inc., 595 F.

Supp. 133, 139 (N.D. Ill. 1984).  Accordingly, the company "reasonably could not be

expected to be resentful of [Fredrikson] or think less of . . . the firm," which is not even

involved in this case, if Medtronic should lose this litigation.  Id.  Simply put, it is "not

reasonable" to accept Plaintiffs' argument "that the outcome of the proceeding adversely

would affect [Fredrikson]'s relationship with [Medtronic]."  Id.

At bottom, the argument Plaintiffs advance is little more than a hypothetical house

of cards:  my son *could* be affected *if* the Court were to rule against Medtronic, *if*

Medtronic then "retaliated" by withdrawing business from Fredrikson, *if* the removal of

that business were to impair my son's financial interests, and *if* that impairment were

---

[3] One could argue that a sufficiently adverse ruling might put Medtronic out of business, thereby depriving Fredrikson of a "significant" client.  Given Medtronic's sheer size, however, such an outcome is highly unlikely.

"substantial."  The converse argument, which Plaintiffs also raise, is similarly conjectural: my son *could* be affected *if* the Court were to rule in favor of Medtronic, *if* Medtronic then "rewarded" Fredrikson by funneling it more business, *if* the additional business enhanced my son's financial interests, and *if* that enhancement were "substantial."[4]  But Plaintiffs are required to offer proof of partiality, Dehghani, 550 F.3d at 721; "unsupported, irrational, or highly tenuous speculation" will not do.  Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987); accord In re Kan. Pub. Employees Ret. Sys., 85 F.3d 1353, 1362 (8th Cir. 1996) (recusal not required where alleged interest is "too remote, speculative, [or] contingent").  For this reason, arguments like those asserted by Plaintiffs have been repeatedly rejected.  See Canino v. Barclays Bank, PLC, No. 94 Civ. 6314, 1998 WL 7219, at *4 (S.D.N.Y. Jan. 7, 1998) ("All of the courts that have addressed this issue have held that § 455(b)(4) does not compel disqualification under these circumstances.").[5]

---

[4] Plaintiffs baldly assert that whatever "substantially affects Medtronic . . . necessarily has an effect on Fredrikson, and in turn, its shareholders."  (Pl. Mem. at 14.)  That contention, however, is pure hypothesis and ignores the realities of modern law-firm economics.  More importantly, the question is not whether this case might affect my son's interests, but rather whether it might "*substantially* affect" them.  28 U.S.C. § 455(b)(5)(iii) (emphasis added).  Something that substantially affects Medtronic need not substantially affect Fredrikson – let alone my son – *ipso facto*, particularly given my son's relatively small stake in the firm's profits (see Koneck Aff. ¶ 16).

[5] The text of Section 455(b)(4) tracks that in Section 455(b)(5)(iii) and requires recusal when a judge, his spouse, or a minor child residing with him has an "interest that could be substantially affected by the outcome of the proceeding."

By way of example, <u>Microsoft Corp. v. United States</u>, 530 U.S. 1301 (2000), the well-publicized antitrust case, addressed circumstances nearly identical to those here. Although <u>Microsoft</u> involved a simple denial of a petition for a writ of *certiorari*, Chief Justice Rehnquist took the unusual step of placing a statement in the United States Reports explaining why he had declined to recuse from considering that petition.  He noted that Microsoft had retained Goodwin, Procter & Hoar, a Boston law firm where his son was a partner, to represent it in antitrust matters; although his son was involved in those matters, neither he nor the firm were involved in the case then pending before the Court.  After analyzing both Section 455(a) and Section 455(b), Chief Justice Rehnquist determined that his recusal was not warranted, stating "it would be unreasonable and speculative to conclude that the outcome of any Microsoft proceeding in this Court would have an impact on [his son's] interests when neither he nor his law firm would have done any work on the matters here." <u>Id.</u> at 1302.  In the instant case, the connection is even more attenuated than that discussed in <u>Microsoft</u> – unlike the Chief Justice's son, my son, who practices in the area of criminal defense, does not now represent, and has never previously represented, Medtronic.  (Koneck Aff. ¶ 14.)

The court in <u>Transportes Coal Sea de Venezuela C.A. v. SMT Shipmanagement & Transport Ltd.</u>, No. 05 Civ. 9029, 2007 WL 62715 (S.D.N.Y. Jan. 9, 2007), reached a similar conclusion.  There, the issue was whether an arbitration award should be set aside because the arbitrator's son worked for a law firm that represented one of the parties in an

unrelated matter.  In declining to vacate the award, the <u>SMT</u> court borrowed from the

standards applicable to recusal in federal court:

> Additionally, the Court finds it significant that federal judges, who are held to
> a more stringent standard of impartiality, . . . are free to hear cases in which a
> party is represented in unrelated matters by the law firms of family members.
> Even under these more stringent standards, for example, a claim that a judge's
> spouse is a partner in a firm which represented a party appearing before the
> judge and that, as a result of this relationship, the judge and her husband
> benefitted from fees from that client describes a chain of causation too
> attenuated to [require recusal].

<u>Id.</u> at *10 (internal quotation marks, alterations, and citations omitted); <u>accord, e.g.</u>,

<u>Pashaian v. Eccleston Props., Ltd.</u>, 88 F.3d 77, 83 (2d Cir. 1996) ("It would simply be

unrealistic to assume . . . that partners in today's law firms invariably have an interest that

could be substantially affected by the outcome of any case in which [a different] partner

is involved."); <u>Canino</u>, 1998 WL 7219, at *4 ("Nor can it be said that simply because one

or more partners in [the judge's] husband's law firm represented Defendant in some

matters, [her] husband possessed an interest that could be 'substantially affected' by the

outcome of the proceedings.").

Plaintiffs note that the judges in <u>In re Digital Music Antitrust Litigation</u>, MDL No.

1780, 2007 WL 632762 (S.D.N.Y. Feb. 27, 2007), and <u>Diversifoods</u> declined to recuse

because, *inter alia*, their family members' law firms did not receive *significant*

compensation from the defendants.  Plaintiffs attempt to contrast those cases with the

instant one, arguing that Medtronic is a "significant" and "material" Fredrikson client.

(<u>See</u> <u>infra</u> note 5.)  In essence, Plaintiffs invite the Court to draw a bright-line rule:  if a

judge's child is a partner in a law firm that derives substantial revenue from a client, then

the judge must recuse from all cases involving that client.  The Court declines Plaintiffs'

invitation.  Such a hard-and-fast rule is contrary to the Eighth Circuit's admonition that a

"relationship between a party and a judge's son or daughter does not *per se* necessitate a

judge's disqualification.  Rather, the determination of whether a conflict exists in a given

situation is factually bound."  In re Kan. Pub. Employees, 85 F.3d at 1364.  Here, the

facts point to a close-knit relationship between Fredrikson and Medtronic, which suggests

that there will be little (if any) financial consequences to the firm – let alone to my son –

no matter how Medtronic fares in this litigation.  That Medtronic might be a "significant"

Fredrikson client, therefore, does not rule the day.[6]

In addition to the ostensible financial interest that my son has in this case,

Plaintiffs also argue that he has other interests, "such as business relationships and

reputations," that could be "substantially affected" were the Court to rule against

Medtronic.  (Pl. Mem. at 15.)  Plaintiffs are correct that Section 455(b)(5)(iii) is not

limited to purely financial interests.  See In re Kan. Pub. Employees, 85 F.3d at 1359.

But Plaintiffs fail to explain, and the Court fails to understand, how a decision for or

---

[6] Plaintiffs cite various articles posted on Fredrikson's website to argue that Medtronic is a "significant" and "material" client of the firm, although none of the cited website sections or articles actually uses those terms.  (See Pl. Mem. at 5, 17 & n.2.)  Regardless, Fredrikson is a large and diverse law firm, with more than 240 lawyers in five offices spanning three countries, with a wide range of practice areas "includ[ing] banking, corporate, employment, energy, renewable energy, franchise, government relations, healthcare, intellectual property, international, litigation, real estate, securities, and tax." http://www.fredlaw.com/news/press/ pr090121.html (last visited March 9, 2009).  Plaintiffs' arguments notwithstanding, there is simply nothing in the record to indicate that Medtronic is Fredrikson's *raison d'etre*.

against Medtronic here might affect his reputation when neither he, nor his firm, is

counsel of record in this case.  For the same reason, it is equally unclear to the Court how

a decision in this case will affect his (or the firm's) "business relationships."  Large law

firms like Fredrikson gain and lose clients – even "material" clients – all the time, and

"the reputation and good will of those firms has not been affected substantially."

Diversifoods, 595 F. Supp. at 139.  There is no reason to conclude otherwise here.  At the

end of the day, it is "impossible to do more than speculate that [my son] might someday

reap a [non-pecuniary] benefit as an indirect result of the success of" Medtronic in this

litigation.  Scott v. Metro. Health Corp., 234 Fed. Appx. 341, 357 (6th Cir. 2007)

(unpublished).

　　　　For all of these reasons, the Court finds that Plaintiffs have failed to satisfy their

burden of demonstrating that recusal is required under 28 U.S.C. § 455(b).

## II.　　Section 455(a)

　　　　As noted above, Section 455(a) is broader than Section 455(b).  Its purpose "is to

promote confidence in the judiciary by avoiding even *the appearance* of impropriety

whenever possible."  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865

(1988) (emphasis added).  Hence, in determining whether recusal under Section 455(a) is

appropriate, the issue is whether a judge's impartiality might reasonably be questioned

"by the average person on the street who knows all the relevant facts of a case."  Scenic

Holding, LLC v. New Bd. of Trs. of Tabernacle Missionary Baptist Church, 506 F.3d

656, 662 (8th Cir. 2007) (quoting Moran, 296 F.3d at 648).  The use of such an objective

standard renders irrelevant "whether a judge is actually biased or actually knows of a ground requiring recusal." Id. Yet, it is "not enough for [Plaintiffs] to throw out [such] charges and then maintain that they cast a pall over the proceedings [simply] because they are 'not inconceivable.'" Scott, 234 Fed. Appx. at 355. That is, "judges should not recuse themselves solely because a party *claims* an appearance of partiality." In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001) (emphasis added); see also In re Mason, 916 F.2d 384, 386 (7th Cir. 1990) (inquiry under Section 455(a) is not made from perspective of "a hypersensitive or unduly suspicious person").

Plaintiffs' argument for recusal under Section 455(a) largely parrots their argument under Section 455(b). They contend that a reasonable person could question my impartiality because my son is a Fredrikson shareholder and "a ruling against Medtronic could adversely affect Fredrikson (whether financially or by reputation or by its ability to obtain new business from Medtronic)." (Pl. Mem. at 13.) For the reasons set forth above, the Court rejects that argument, as Plaintiffs offer nothing more than "the gossamer strands of speculation and surmise" to support it. In re United States, 158 F.3d 26, 35 (1st Cir. 1998). An "average" person, knowing all of the facts and circumstances, would not conclude that my presiding over this case would have any impact on Medtronic's relationship with Fredrikson.

As with Section 455(b), the Court is not painting on a blank palette in reaching this conclusion – legions of cases have come to the same result. For example, in In re Billedeaux, 972 F.2d 104 (5th Cir. 1992), the plaintiff sought recusal of the district judge

because her husband was a partner at a law firm that represented the defendant (Tidex) in

other matters.   The district judge denied the motion, and the plaintiff then petitioned the

Fifth Circuit for a writ of mandamus compelling the district judge to recuse.   The

appellate court's rejection of that petition is particularly apt here:

> There is no assertion that [the district judge] ever represented Tidex; nor is
> there an averment that her husband has handled matters for that client.   The
> claim, instead, is that her husband is a partner in a firm that has represented
> Tidex on various occasions and that, as a result of that relationship, she and her
> husband benefit from fees from that client and that, accordingly, her
> impartiality might reasonably be questioned.
>
> A similar argument was made in Chitimacha Tribe [of La. v. Harry L.
> Laws Co., 690 F.2d 1157 (5th Cir. 1982)]: The Plaintiffs asserted that the
> judge was receiving payments from his former firm, which at all times still
> represented the defendant and thus might suffer financially if the judge were
> to rule adversely to the defendant.   We held that "[a]t best, this speculation is
> remote and unrealistic and does not justify disqualification."   Id. at 1167.
>
> Here, as well, there is no reason to conclude or speculate that any action
> [the district judge] might take in the case *sub judice* would affect [her
> husband's law firm] or [her] husband.   A "remote, contingent, or speculative"
> interest is not one "which reasonably brings into question a judge's partiality."
> Thus, any interest of [the district judge] is too remote and speculative to
> support or suggest recusal.

972 F.2d at 105-06 (citations omitted).   Similarly, in Microsoft, Chief Justice Rehnquist

stated that he did "not believe that a well-informed individual would conclude that an

appearance of impropriety exists simply because [his] son represents, in another case, a

party that is also a party to litigation pending in this Court."   530 U.S. at 1302; see also In

re Digital Music Antitrust Litig., 2007 WL 632762, at *12 ("Courts have uniformly

rejected the argument that an appearance of impropriety exists in the following situation:

(i) a judge's spouse is a partner in a law firm that represents a litigant in matters other

than the case before the judge; and (ii) the spouse did not perform any work at the law

firm for the litigant or worked for the litigant or unrelated matters."); Canino, 1998 WL

7219, at *3 ("Even if Judge Cederbaum had known that her husband's law firm

represented the Defendant in an unrelated matter, § 455(a) would not have compelled her

disqualification from this litigation."); Diversifoods, 595 F. Supp. at 134, 139-40 (no

appearance of impropriety where judge's husband was partner of law firm that "presently

represents the defendant in other matters, and, prior to the filing of this lawsuit, had some

connection with the events underlying this litigation").[7]  As the Seventh Circuit has noted,

the care with which the recusal rules were crafted should lead any judge to "hesitate to

treat the general language of § 455(a) as a bar to judicial service whenever a relative has

'something to do with' a party."  In re Nat'l Union Fire Ins. Co. of Pittsburgh, 839 F.2d

---

[7] That the judge's husband in Diversifoods had "some connection with the events
underlying" that litigation is noteworthy.  Here, Plaintiffs assert that "[c]ertain former Medtronic
employees, now Fredrikson shareholders, worked on regulatory and compliance matters
including aspects of the PreMarket Approval or exemption from approval, of the very product or
root devices in question."  (Pl. Mem. at 13.)  In support, they rely on a 2000 letter between a
Fredrikson shareholder (Robert Klepinski), who was then employed by Medtronic, and the FDA
regarding "temporary pacemaker electrodes that include myocardial needles used during open
chest surgery."  (Gustafson Aff. Ex. D.)  But there is no obvious connection between such
devices and the Sprint Fidelis leads, which are wires permanently affixed to implantable cardiac
defibrillators (see MCC (Doc. No. 129) ¶¶ 2-3), nor do Plaintiffs point to any.  Moreover,
Fredrikson specifically avers that it "has never represented Medtronic in any regulatory matter
concerning Fidelis leads and played no role in advising Medtronic during the design,
development, testing, premarket approval, or post-market surveillance of Fidelis leads."
(Koneck Aff. ¶ 8.)  In any event, Diversifoods makes clear that recusal would not be required
even if this nine-year-old letter indicated some minor connection between Klepinski and the
facts underlying this litigation.

1226, 1229 (7th Cir. 1988). That is all that is present here, given the highly tenuous connection between me, my son, and Medtronic.[8]

Plaintiffs also argue that my comments in response to inquiries from several reporters would lead a reasonable person to "question the Court's impartiality." (Pl. Mem. at 19.) Plaintiffs are referring to comments made shortly after I was informed by Plaintiffs' lead counsel, in a conference call, that Plaintiffs intended to move for my recusal.[9] In those comments, I noted that I was then unaware of any relationship between Medtronic and Fredrikson and that, because my son practices in the area of criminal defense, I did not then perceive any basis to disqualify myself. (See id. at 18-19.) I fail to see how those comments in any way suggested that I had "predetermin[ed] . . . the outcome of the [instant] motion," as Plaintiffs argue. (Id. at 19.) Rather, they simply and accurately reflected the state of affairs as they existed at the time I was asked to comment. Only under a strained interpretation can they be read to imply that I would not recuse myself under any circumstances or would ignore the facts Plaintiffs intended to present to

---

[8] Plaintiffs' reliance on United States v. Miell, No. 07-CR-101, 2008 WL 974843 (N.D. Iowa Apr. 8, 2008), is misplaced. There, the defendant was indicted for scheming to defraud several insurance companies. One such insurer sued the defendant to recover its losses and was represented in that litigation by the judge's husband's law firm. See id. at *1. Because of the close connection between the criminal and civil cases, the judge recused "out of an abundance of caution." Id. at *3. The facts here are markedly different.

[9] Notably, the Court was contacted by a reporter for the *Wall Street Journal* within hours of that conference call, even though no transcript or other public record of that call had yet been filed. These facts call to mind the concerns raised in In re Drexel Burnham Lambert, 861 F.2d at 1309, that litigants with access to the media can manipulate the press in an attempt to obtain a judge more to their liking.

-15-

me.  See, e.g., Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest.

Employees Int'l Union, 332 F. Supp. 2d 667, 675 (S.D.N.Y. 2004).  An average person

fully informed of the facts would not perceive bias based on these comments.

In re Boston's Children First, 244 F.3d 164 (1st Cir. 2001), upon which Plaintiffs

rely, is readily distinguishable.  There, the district judge wrote a letter to a newspaper and

later spoke with a reporter, in both instances defending her decision to defer ruling on a

motion for class certification.  Id. at 166-67.  Under those "highly idiosyncratic"

circumstances, the First Circuit concluded that the district judge should have recused

herself.  Here, by contrast, my comments did not address, let alone defend, any prior

decision in this case.  Nor were my comments reasonably susceptible to the interpretation

that I had pre-judged the instant Motion.[10]

Plaintiffs have failed to show that recusal under Section 455(a) is warranted.

---

[10] After the First Circuit decided In re Boston's Children First, the district judge asked the
court to rehear the matter en banc.  Although that request was denied, half of the active judges of
the Circuit expressed the view that "the district court's statement to the reporter . . . d[id] not
create an appearance of partiality such as to require mandatory recusal under 28 U.S.C.
§ 455(a)."  244 F.3d at 171.  Those judges were "particularly concerned that section 455(a) not
be read to create a threshold for recusal so low as to make any out-of-court response to a
reporter's question the basis for a motion to recuse."  Id.

### III.    Additional considerations

The analysis set forth above fully disposes of Plaintiffs' Motion.  Nevertheless, the

Court pauses to address several additional matters, although it need not (and does not)

rely on any of them in reaching its decision.

First, the Court believes that the timing of Plaintiffs' Motion speaks volumes.

Plaintiffs claim they learned of the purportedly "extensive" relationship between

Fredrikson and Medtronic only a few weeks ago, but their evidence of that relationship

consists almost entirely of articles posted on Fredrikson's website, many of which are

several years old.  For instance, Plaintiffs cite a June 16, 2005, press release touting the

firm's hiring of Klepinski (see Pl. Mem. at 5 n.1 (citing http://www.fredlaw.com/news/

press/pr050616.html (last visited March 9, 2009))); the July/August 2006 issue of

*Corporate Board Member* magazine, which lists Medtronic as a "representative" client of

the firm (see Pl. Mem. at 5 n.2 (citing http://www.fredlaw.com/firm/CBM2006.pdf (last

visited March 9, 2009))); and a June 1, 2007, article in the *Minneapolis St. Paul Business

Journal* discussing the firm's hiring of a former Medtronic attorney (see Pl. Mem. at 6 n.3

(citing http://www.fredlaw.com/news/24113(eprint).pdf (last visited March 9, 2009))).

Plaintiffs also cite various other internet sources that appear to have existed far longer

than two weeks.  (See, e.g., Pl. Mem. at 10 n.22 (citing http://www.bizjournals.com/

twincities/stories/2008/09/01/daily5.html (last visited March 9, 2009)).)

The Eighth Circuit has repeatedly held that "[m]otions for recusal under 28 U.S.C.

§ 455 will not be considered unless timely made."  Tri-State Fin., LLC v. Lovald, 525

F.3d 649, 653 (8th Cir. 2008) (internal quotation marks and citation omitted); <u>accord</u>

<u>Fletcher</u>, 323 F.3d at 664; <u>United States v. Bauer</u>, 19 F.3d 409, 414 (8th Cir. 1994).

"Timeliness requires a party to raise a claim 'at the earliest possible moment after

obtaining knowledge of facts demonstrating the basis for such a claim.'" <u>Fletcher</u>, 323

F.3d at 664 (citation omitted).  Plaintiffs seeking recusal cannot claim ignorance of key

facts easily discoverable – they are "charged with knowledge of all facts known or

knowable, if true, with due diligence, from the public record or otherwise." <u>In re Digital</u>

<u>Music</u>, 2007 WL 632762, at *9; <u>accord</u> <u>In re Kan. Pub. Employees</u>, 85 F.3d at 1363 n.8

(rejecting belated suggestion of partiality based on information "easily accessible" from

*Almanac of the Federal Judiciary*); <u>United States v. Daley</u>, 564 F.2d 645, 651 (2d Cir.

1977) (recusal motion untimely where predicate facts were "a matter of public record

[and] were at all times ascertainable by counsel"); <u>Huff v. Standard Life Ins. Co.</u>, 643 F.

Supp. 705, 708 (S.D. Fla. 1986) (where basis for motion is "known, or knowable, with

due diligence from public records or otherwise," delay in filing motion is basis for

denial).  The age of the sources relied on here belies Plaintiffs' assertion that they lacked

awareness of the connections between Fredrikson and Medtronic.  Indeed, Plaintiffs

themselves describe the connection between the firm and Medtronic as "highly promoted"

and "long standing."  (Pl. Mem. at 10.)

   Moreover, there is not now, nor has there ever been, any secret that my son is a

shareholder at Fredrikson.  Notably, Plaintiffs claim only that they were unaware of

Fredrikson's connection to Medtronic, not that they were unaware of my son's position at

the firm.  Of course, Plaintiffs could not have made that assertion – I am informed that my

son has known Plaintiffs' lead counsel, Dan Gustafson, for many years, and he is well

aware of my son's position with the firm.[11]  Given that knowledge, Plaintiffs could have –

and in the Court's view, should have – investigated the extent of the purported "close,

continuing" relationship between the firm and Medtronic long ago.  (Id. at 10.)[12]

Instead, the timing of Plaintiffs' Motion – coming not long after the Court issued a

major ruling adverse to Plaintiffs – suggests, to be charitable, that it is an exercise in

judge shopping.  The Eighth Circuit has expressed its disapproval of litigants who wait to

seek recusal until after a judge has "issued an unfavorable ruling."  Neal v. Wilson, 112

F.3d 351, 357 n.6 (8th Cir. 1997).  Counsel may not "lie in wait, raising the recusal issue

only after learning the court's ruling on the merits."  Phillips v. Amoco Oil Co., 799 F.2d

1464, 1472 (11th Cir. 1986).  A judge faced with a recusal motion, therefore, must "be

---

[11] A judge may rely on "facts drawn from his own personal knowledge" when ruling on a recusal motion under 28 U.S.C. § 455.  United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985).

[12] Plaintiffs claim they had no obligation to conduct such an investigation, citing American Textile Manufacturers Institute, Inc. v. The Limited, Inc., 190 F.3d 729, 742 (6th Cir. 1999), for the proposition that litigants are not required to "pore through the judge's private affairs" to discover a potential conflict.  (See Pl. Mem. at 21.)  But the facts Plaintiffs allege to have recently discovered have nothing to do with my "private affairs" – they concern only the links between Fredrikson and Medtronic.  And given Plaintiffs' lead counsel's long-standing knowledge that my son is a shareholder at Fredrikson, the Court does not believe it was appropriate for Plaintiffs to sit idly by while the Court (and the parties) invested substantial time, effort, and expense in this case for the past year only to then move for my recusal.  See In re Nat'l Union, 839 F.2d at 1232 (noting "the substantial costs to the administration of justice . . . caused by delay in pursuing" recusal); In re Mercedes-Benz Antitrust Litig., 226 F. Supp. 2d 552, 557 (D.N.J. 2002) (given court's "substantial investment of time" in case, "[f]airness to the litigation process and to the parties weigh[ed] against recusal"; "This is no time for the Court to abandon its post through an excessively nice sense of the proprieties.").

alert to avoid the possibility that those who . . . question his impartiality are in fact

seeking to avoid the consequences of his . . . adverse decision." <u>In re Kan. Pub.</u>

<u>Employees</u>, 85 F.3d at 1358-59 (citation omitted).  That would appear to be the case here.

The Court is also keenly aware of the prudential considerations militating against

Plaintiffs' Motion.  Accepting Plaintiffs' logic would require judges to run conflict

checks through the law firms employing their children, spouses, parents, aunts and uncles,

and other family members within the circle of consanguinity set forth in Section 455.

Difficult questions would need to be asked if a party to a proceeding before the judge

appeared on such a conflict check:  is this a substantial client?  Is it likely the client will

retain the firm in the future?  How is the family member's compensation structured, and

is it likely to be affected by this client's business?  Such a system would be wholly

unworkable, as well as a massive drag on the pace of litigation.  Such a concern is not

merely illusory – indeed, the spouses, children, and other family members of many of the

judges of this Court work for law firms in the Twin Cities.

Furthermore, accepting Plaintiffs' argument would push the Court down a slippery

slope that could require recusal in many situations well beyond the carefully crafted

parameters of Section 455.  Should the Court recuse, for example, in any case involving a

major medical-device manufacturer, such as St. Jude or Boston Scientific?  After all,

rulings for (or against) a key player in an industry can affect the fortunes of others in the

same industry, such as Medtronic in this hypothetical.  Or perhaps the Court should

recuse from all cases involving lawyers who are friends with my son, for conceivably (by

Plaintiffs' logic) ruling adverse to such a lawyer could impair that friendship.  Indeed, it is not difficult for the creative – or, perhaps more accurately (and bluntly), litigation-savvy – mind to conjure up a plethora of parades of horribles that could require recusal based on only the thinnest reed of logic.  Adopting that logic would cripple the bench and eviscerate the Court's ability to perform its key function: the administration of justice.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Recusal (Doc. No. 245) is **DENIED**.


Dated: March 9, 2009                                             s/Richard H. Kyle
                                                                 RICHARD H. KYLE
                                                                 United States District Judge